## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 24-CR-00121-SEH |
| PHILLIP EUGENE WALLACE, | |
| Defendant. | |

## <u>OPINION AND ORDER</u>

### I. Background/Procedural History

A federal grand jury charged Phillip Eugene Wallace in count one of a two-count indictment with possession of firearms and ammunition as a convicted felon. [ECF No. 2 at 1–2]. Wallace moves to dismiss the charge against him; he contends that the criminal statute under which he is charged, 18 U.S.C. § 921(g)(1), is unconstitutional as applied to him. [ECF No. 41 at 1]. Because *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) remains binding Tenth Circuit precedent, this Court is obligated to follow that decision and deny Wallace's motion. However, even under the framework set out in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the result is the same. Because this Nation's historical tradition of firearm regulation at and around the time of the founding includes laws that are analogous to the

contemporary disarmament of convicted felons like Wallace, Section 922(g)(1) is a valid exercise of congressional authority. Therefore, Wallace's motion to dismiss the indictment [ECF No. 41] is denied.

## II. Second Amendment Jurisprudence

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment guarantees an individual right to possess firearms. 554 U.S. 570, 595 (2008). The Court observed that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 626. The Tenth Circuit relied on this observation in *United States v. McCane* to reject a Second Amendment challenge to Section 922(g)(1)—the federal statute banning felons from possessing firearms or ammunition. 573 F.3d at 1047 (10th Cir. 2009).

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court set out a two-step test for determining whether legislation regulating the use or possession of firearms violates the Second Amendment. 597 U.S. 1 (2022). Under *Bruen*, a court considering such a challenge must first determine whether the Amendment's "plain text covers an individual's conduct." *Id.* at 24. If so, "the Constitution presumptively protects that conduct" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*;

*see also id.* at 17 ("To justify its regulation, the government may not simply posit that the regulation promotes an important interest.").

*Bruen* offered guidance for making the historical inquiry at the second step. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence," although not necessarily dispositive, "that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 26. Likewise, if "earlier generations addressed th[at same] societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* at 26–27. However, the historical inquiry is not a "regulatory straightjacket[.]" *Id.* at 30. It "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).

In *United States v. Rahimi*, the Supreme Court provided additional insight into how courts should approach the historical analysis laid out in *Bruen*. 602 U.S. --, 144 S. Ct. 1889 (2024). Because the Second Amendment allows "more than just those regulations identical to ones that could be found in 1791," *id.* at 1926 (Jackson, J., concurring), the Court directed that lower courts "must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck

3

by the founding generation to modern circumstances." *Id*. at 1898 (cleaned up). Contemporary laws that address problems like those addressed by the restriction need not "precisely match its historical precursors" to "pass constitutional muster." *Id*. at 1898 (quoting *Bruen*, 597 U.S. at 30). And although it "must comport with the principles underlying the Second Amendment," the contemporary restriction "need not be a dead ringer or a historical twin." *Id*. (cleaned up). Finally, when drawing analogies to historical regulations, courts should consider "[w]hy and how the regulation burdens the right" to bear arms. *Id*. (citing *Bruen*, 597 U.S. at 29).

In *Vincent v. Garland*, which came after *Bruen* but before *Rahimi*, the Tenth Circuit held that *Bruen* did not "indisputably and pellucidly abrogate[]" its precedent set out in *McCane*. 80 F.4th 1197, 1202 (10th Cir. 2023), *cert. granted*, *judgment vacated*, 144 S. Ct. 2708 (2024) (mem). Following *Rahimi*, the Supreme Court vacated the judgment in *Vincent* and remanded the case "for further consideration in light of" *Rahimi*. *Vincent*, 144 S. Ct. 2708 (2024) (mem).

## III. Analysis

### A. The Parties' Arguments.

Wallace argues that the charge against him for violation of 18 U.S.C. § 922(g)(1) should be dismissed as unconstitutional as applied to him "because the prior felonies alleged in the Indictment do not satisfy the

4

requirement set out in" *Bruen* on the basis that "the Nation's historical tradition of firearms regulation does not support permanently disarming persons for crimes that do not demonstrate a propensity to engage in violent criminal conduct such that the person would pose a real and significant danger to the public if armed." [ECF No. 41 at 2]. Therefore, Wallace argues, his non-violent prior felonies cannot serve as a basis to restrict his Second Amendment rights. [*Id.* at 10–13]. Wallace further argues that he is among "the people" protected by the Second Amendment, that the Second Amendment's plain text covers his conduct, and that this Court should "reject *Vincent*'s approach and apply *Bruen* faithfully." [*Id.* at 6–15].

The government responds with four main arguments: (1) the Tenth Circuit's decision in *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) is binding precedent and forecloses Wallace's argument; (2) restricting most felons from possessing most firearms does not implicate the Second Amendment; (3) prohibiting firearm possession by most felons is consistent with the Nation's tradition of firearm regulation; and (4) the federal felon-in-possession law is constitutional as applied to Wallace. [ECF No. 44].

In reply, Wallace asks the Court to ignore "extraneous facts" included in the government's response. [ECF No. 47 at 1]. Wallace also reiterates several points made in his motion. [*Id.* at 1–5]. Wallace's most substantial arguments developed in reply, however, are the arguments and authorities he provides

5

for the proposition that that Nation's historical tradition of firearm regulation does not justify restricting his Second Amendment rights. [*Id*. at 5–10].

**B. *McCane* forecloses Wallace's motion.**

The Tenth Circuit is "bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *United States v. Manzanares*, 956 F.3d 1220, 1225 (10th Cir. 2020). However, an exception exists when the Supreme Court issues an opinion contradicting or invalidating the analysis in Tenth Circuit precedent. *United States v. Brooks*, 751 F.3d 1204, 1209–10 (10th Cir. 2014). Only when intervening law "is so indisputable and pellucid" does the exception apply. *See Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015) (finding intervening caselaw not "so indisputable and pellucid" to permit a finding contrary to binding precedent).

Neither *Bruen* nor *Rahimi* abrogated *McCane*. Finding that "means-end scrutiny in the Second Amendment context" was "one step too many," the *Bruen* Court applied a historical analysis consistent with *Heller*. *See Bruen*, 597 U.S. at 19–26 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."). In *McCane*, the Tenth Circuit did not rely on means-end scrutiny to uphold

6

Section 922(g)(1). Rather, it relied on *Heller*'s explicit statement that nothing in the opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *United States v. McCane*, 573 F.3d at 1047 (quoting *Heller*, 554 U.S. at 626). Justice Kavanaugh's concurring opinion in *Bruen* reiterated *Heller*'s explicit statement. *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring). Therefore, *Bruen* did not contradict or invalidate the Tenth Circuit's analysis in *McCane*.

In *Vincent*, the Tenth Circuit concluded that *Bruen* did not abrogate *McCane*, but rather inferred support for prohibiting felons from possessing firearms, noting "the six Justices' reaffirmation of the *Heller* language and the Court's apparent approval of 'shall-issue' regimes and related background checks." *Vincent*, 80 F.4th at 1201–02. Although the Supreme Court vacated the judgment in *Vincent* and remanded the case in light of *Rahimi*, it did not question the merits of *McCane* or express any doubt about the Tenth Circuit's reasoning in *Vincent* when doing so. "A GVR is appropriate when 'intervening developments ... reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome' of the matter." *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (quoting *Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam)). However, with the GVRs for circuit decisions involving challenges

to Section 922(g)(1) that issued immediately following *Rahimi*, the Supreme Court acted consistently across all circuits, without any regard to the prevailing party below. *See* Order List, dated July 2, 2024, at 2–8, available at https://www.supremecourt.gov/orders/courtorders/070224zor_2co3.pdf (issuing GVR orders to the Second, Third, Fifth, Eighth, and Tenth circuits for further consideration in light of *Rahimi*). Therefore, the Court finds that the GVR in *Vincent* cannot show any "reasonable probability" that the Tenth Circuit will reject *McCane* and come to a different "ultimate outcome" upon reconsideration.

Further, the Tenth Circuit has recently found that *Rahimi* did not "indisputably and pellucidly abrogate" *McCane* and does not alter *Vincent*'s conclusion. *United States v. Curry*, No. 23-1047, 2024 WL 3219693 at *4 n.7 (10th Cir. June 28, 2024) (unpublished).[1] *Bruen* clarified the test for assessing Second Amendment challenges, and *Rahimi* applied *Bruen*'s test to a different federal firearm regulation than the one at issue here. *See Rahimi*, 144 S. Ct. at 1898–1902. Although *Rahimi* resolved the constitutionality of Section 922(g)(8), it did not "undertake an exhaustive analysis of the full

---

[1] The Court acknowledges that the Tenth Circuit has yet to decide the impact of *Rahimi* on *Vincent* and *McCane*, *see Vincent v. Garland*, No. 21-4121, (10th Cir.), [Document 116], but the Court finds persuasive the Tenth Circuit's most recent statement on the precedential weight of *McCane* as stated in *Curry*.

8

scope of the Second Amendment." *Id*. at 1903 (quotation marks and ellipsis omitted). The Court "conclude[d] only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id*. The Court did not opine on Section 922(g)(1) beyond reiterating that "prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id*. at 1902 (quoting *Heller*, 554 U.S. at 626 n.26). It thus did not unequivocally overrule *McCane*.

This Court is obligated to apply Tenth Circuit precedent. *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990). Because neither *Bruen* nor *Rahimi* indisputably and pellucidly abrogated *McCane*, *McCane* remains binding authority upon this Court. Accordingly, Wallace's motion to dismiss [ECF No. 41] is denied.

## C. Even if Wallace's motion was not foreclosed by *McCane*, Section 922(g)(1) is constitutional under *Bruen*'s framework.

### 1. The Second Amendment presumptively protects Wallace's conduct.

Under *Bruen*, the Court must first determine whether the Second Amendment's plain text covers Wallace's conduct. If so, "the Constitution presumptively protects [his] conduct." *Bruen*, 597 U.S. at 24. The Second Amendment states that a "well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Here, the parties do not dispute that Wallace falls within "the people" protected by the Second Amendment. Nor do they dispute that the firearms and ammunition identified in the indictment are "arms" within the Second Amendment's meaning. So, the Court must determine whether Wallace's possession of the firearms and ammunition is presumptively protected under the Second Amendment right to "keep and bear" arms.

Wallace is charged under a statute that criminalizes possession of a firearm or ammunition with knowledge of the possessor's convicted status. *See* 18 U.S.C. § 922(g)(1); *see also Rahaif v. United States*, 588 U.S. 225, 237 (2019) (holding that a defendant must have knowledge that "he belonged to the relevant category of persons barred from possessing a firearm"); 10th Cir. Crim. Pattern Jury Instr. 2.44 (listing as an element of the offense, "the defendant knew he was convicted of a felony at the time he possessed a firearm [or ammunition]."). Therefore, the government contends, Wallace's relevant conduct for Second Amendment protection is twofold: (1) possession of a firearm; (2) with knowledge of his underlying convictions. [ECF No. 44 at 15]. But this approach does not fit under *Bruen*'s first step, which requires a plain text analysis. The Second Amendment protects "keep[ing]" and "bear[ing]" arms. *Bruen*, 597 U.S. at 32. By possessing the firearms and

ammunition, Wallace "kept" them. *See Heller*, 554 U.S. at 582–83 ("[T]he most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons' ... '[k]eep arms' was simply a common way of referring to possessing arms, for militiamen *and everyone else*.") (emphasis in original). Thus, when analyzing Section 922(g)(1) for constitutional protection, the relevant conduct is mere possession of the firearm and ammunition, not what *additional* conduct the defendant engaged in or the defendant's state of mind.

The government attempts to add a historical tradition burden into *Bruen*'s first step by discussing the purported historical tradition of regulating firearm use by those engaged in certain conduct and various classes of people. [ECF No. 44 at 13–18]. "But *Bruen* makes clear that the first step is one based solely on the text of the Second Amendment to determine if it presumptively protects an individual's conduct—a presumption that the United States can *then* rebut with history and tradition." *United States v. Harrison*, No. CR-22-00328-PRW, 654 F. Supp. 3d 1191, 1198 (W.D. Okla. Feb. 3, 2023) (emphasis in original). By advocating a law-abiding vs. non-law-abiding distinction, the government reads text into the Second Amendment that simply does not exist. The Court cannot do that under *Bruen*'s first step.

Because the plain text of the Second Amendment covers Wallace's conduct, his conduct is presumptively constitutionally protected. Thus, if his claims were not foreclosed by *McCane*, the government would be required to "justify

11

[Section 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

## 2. Section 922(g)(1) is constitutional because it is consistent with the Nation's historical tradition of firearm regulation.

Wallace makes an as-applied challenge to the constitutionality of Section 922(g)(1). [ECF No. 41 at 1]. The distinction between facial and as-applied challenges to a law's constitutionality "goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). "[I]t does not speak at all to the substantive rule of law necessary to establish a constitutional violation[;]" therefore, the same substantive constitutional analysis applies. *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). Considering the full measure of disability imposed on felons by Section 922(g)(1), the Court must ask whether historical analogues to contemporary laws exist that prohibit felons like Wallace from possessing firearms.

The government makes a virtually identical argument in its response to Wallace's motion as it did in another case recently decided by the undersigned. *Compare* [ECF No. 44 at 18–27], *with United States v. Sutton*, No. 4:24-cr-00168-SEH (N.D. Okla.), [ECF No. 37 at 16–23]. But unlike in *Sutton*, the government also argues that the specific circumstances of Wallace's arrest show he "poses an unacceptable risk of danger while armed,"

12

which justifies disarming him. [[ECF No. 44 at 26–27]. This appears to be a response to Wallace's argument that the Nation's historical tradition of firearm regulation "does not support permanently disarming persons for crimes that do not demonstrate a propensity to engage in violent criminal conduct such that the person would pose a real and significant danger to the public if armed." [ECF No. 41 at 2].

Wallace's request for a violent/non-violent felony analysis necessarily involves considering whether a conviction is categorically a crime of violence before assessing whether the crime was of the type that led to disarmament at the founding. The categorical "crime of violence" analysis can be counterintuitive, and the analysis for identically named crimes can differ from one jurisdiction to the next. Thus, the Court finds this approach inappropriate in the Second Amendment context. Moreover, parsing out convictions as violent/non-violent leads to due process concerns because the approach leads to individuals not being able to determine whether their conduct is prohibited under Section 922(g)(1). *See Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964) (holding the Due Process Clause requires "a criminal statute give fair warning of the conduct which it prohibits."). For these additional reasons, the Court declines to conduct a violent/non-violent felony analysis for as-applied challenges to Section 922(g)(1). Therefore, the specific factual allegations against Wallace need not be addressed.

Wallace does make several arguments regarding the Nation's historical tradition of firearm regulation that do not, however, relate to a violent/non-violent analytical framework. [ECF No. 47 at 5–10]. The Court is not persuaded by Wallace's arguments. For the same reasons explained by the Court in *United States v. Sutton*, No. 24-CR-00168-SEH, 2024 WL 3932841, at \*5–9 (N.D. Okla. Aug. 23, 2024), the Court finds that Section 922(g)(1), as applied to Wallace, is a constitutional limitation on his Second Amendment rights.

## IV. Conclusion

The Court denies Wallace's motion under binding precedent set out in *McCane*. However, even if *McCane* was abrogated under *Bruen* or *Rahimi*, Wallace's claims fail under *Bruen's* framework. Because this Nation's historical tradition of firearm regulation at and around the time of the founding includes laws that are analogous to the contemporary disarmament of convicted felons like Wallace, Section 922(g)(1) is a valid exercise of congressional authority. Therefore, Wallace's motion to dismiss the indictment [ECF No. 41] is denied.

14

DATED this 20th day of September, 2024.

Sara E. Hill
UNITED STATES DISTRICT JUDGE